# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSHUA A. HUFFMAN,** | * | |
| **Plaintiff** | * | |
| v | * | Civil Action No. GJH-16-514 |
| MCO II SHOVEL,[1] | * | |
| LT. BYRD, | | |
| MRS. WILLIAMS, | * | |
| COS GONZALEZ, and | | |
| SUPERINTENDENT OF THE | * | |
|   WICOMICO COUNTY DETENTION | | |
|    CENTER, | * | |
| **Defendants** | * | |

***

## MEMORANDUM OPINION

Defendants MCO Schevel, Lieutenant Byrd, Mrs. Williams, COS Gonzalez, and the Superintendent of the Wicomico County Detention Center ("WCDC"), by their counsel, move to dismiss or, in the alternative, for summary judgment, ECF No. 21, in response to self-represented Plaintiff Joshua A. Huffman's Amended Complaint, ECF No. 18. Although advised of his right to file an opposition with affidavits and exhibits, ECF No. 22, Huffman has not responded, and the time for doing so has expired. The Court finds that a hearing is unnecessary. *See* Loc. R. 105.6. (D. Md. 2016). For reasons to follow, Defendants' Motion, construed as a Motion for Summary Judgment, is granted.

I.    **BACKGROUND**

Huffman is a Maryland state prisoner presently incarcerated at Western Correctional Institution in Cumberland, Maryland. Huffman was initially tried in July 2012 and convicted of

---

[1] The Clerk shall amend the docket to spell MCO II Schevel's surname as it appears in Defendants' pleadings. ECF Nos. 12, 21.

sexual abuse of a minor, two counts of second-degree sex offense, third-degree sexual offense, second-degree assault, and causing the ingestion of bodily fluids. The Court of Special Appeals of Maryland reversed and remanded the convictions on appeal. *Huffman v. State,* No. 1847, Sept. Term 2012 (filed December 9, 2014)). On April 6, 2015, Huffman was transferred from North Branch Correctional Institution (NBCI) in Cumberland, Maryland to WCDC. ECF No. 12-6; ECF No. 12-6 at 11 Because Huffman was an alleged child molester at the time of his detention, he was placed in protective custody at WCDC. ECF No. 12-6 at 50, 64, 70, 73; ECF No. 12-1 at 21.

At Huffman's second trial, a jury convicted him of sexual abuse of a minor, second degree sex offense, second degree assault, and causing ingestion of bodily fluids. On August 13, 2015, Huffman was sentenced in the Circuit Court for Wicomico County to a life sentence for the second-degree sexual offense conviction. ECF No. 12-7. The remaining convictions were merged at sentencing. ECF No. 12-6 at 8. The judgment was affirmed on appeal. *Huffman v. State*, No. 1602. Sept. Term 2015 (filed October 5, 2016). Of the 136 days Huffman was held at WCDC, he served only the last five days as a convicted prisoner. ECF No. 6 at 21-25.

On February 19, 2016, Huffman filed a Complaint against WCDC, MCO Schevel, Lt Byrd, Mrs. Williams, Sgt. Gonzalez, and others which he supplemented at the direction of the Court, alleging that between April and June 2015, while confined at WCDC, he was improperly placed in protective custody on lock down status, subjected to unconstitutional conditions of confinement, denied use of his inhaler, and denied adequate access to the law library. ECF Nos. 1, 2, 4. As relief, Huffman asked this Court to award him $1 million in damages. ECF No. 1. Defendants filed a Motion to Dismiss or, in the Alternative for Summary Judgment ECF No. 12. Huffman filed an opposition to Defendants' first dispositive motion. ECF Nos. 14.

On July 24, 2017, the Court granted Defendants' first dispositive Motion, ECF No. 12, dismissing Huffman's claims against WCDC with prejudice and dismissing the claims against the remaining Defendants without prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. 1915(e)(2)(B)(ii). ECF Nos. 16, 17. The Court dismissed the claims against the individual Defendants without prejudice to Huffman filing a supplement to the Complaint to allege the specific action that each named Defendant took to deprive him of a constitutional right. ECF Nos. 16, 17.

On August 14, 2017, Huffman filed an eleven page Amended Complaint pursuant to 42 U.S.C. §1983 against MCO II Schevel, Lt. Byrd, Mrs. Williams, COS Gonzalez, and also named the Superintendent of WCDC as a defendant. ECF No. 18. The Complaint alleges Defendants acted with deliberate indifference to Huffman's medical needs, subjected him to unsafe conditions of confinement, denied him access to the courts, and violated his rights under the First, Eighth, and Fourteenth Amendments and the Prison Rape Elimination Act (PREA). As redress, he seeks declaratory and injunctive relief, $50,000 in punitive damages, and $50,000 in compensatory damages. ECF No. 18 at 9-10. Defendants have filed the pending Motion seeking dismissal of the Amended Complaint and Plaintiff has not responded. ECF No. 21-1.

## II.     STANDARD OF REVIEW

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In making this determination, "[t]he district court ... must hold the pro se complaint to

less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White,* 886 F.2d 721, 722-723 (4th Cir. 1989).

When defendants seek dismissal or, in the alternative, summary judgment, a court may use its discretion, under Rule 12(d), to determine whether to consider matters outside the pleadings. *See Kensington Volunteer Fire Dep't., Inc. v. Montgomery Cty.*, 788 F.Supp.2d 431, 436–37 (D. Md. 2011), *aff'd sub nom., Kensington Volunteer Fire Dep't., Inc. v. Montgomery Cty.*, 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), "[w]hen matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(d) ).

The United States Court of Appeals for the Fourth Circuit has outlined two requirements for when a motion to dismiss may be converted to a motion for summary judgment: (1) the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and (2) "the parties 'first [must] be afforded a reasonable opportunity for discovery.' " *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985)). In circumstances such as presented here, when the motion is expressly captioned as a motion to dismiss or in the alternative a motion for summary judgment and matters outside of the pleadings are submitted, the parties are deemed to have sufficient notice that conversion may be granted. *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D. Md. 2005). "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.' " *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)

(quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996) ). Further, Huffman was provided an opportunity to file an opposition with affidavits and exhibits, but has not done so. Under the circumstances presented here, the Court is satisfied that it is appropriate to address Defendants' dispositive Motion as one for summary judgment, because matters outside of the pleadings will be considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Under Fed. R. Civ. P. 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *accord Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

III. **DISCUSSION**

Defendants argue that Huffman's Amended Complaint "primarily seeks declaratory relief, not monetary damages, although a sum of $100,000 is requested" (parenthesis deleted), and his transfer from WCDC to the Division of Correction has rendered his conditions of confinement claims moot. ECF No. 21-1 at 2, 5. Defendants argue that if Huffman has advanced a viable claim for monetary damages that is not moot, then they are entitled to

5

summary judgment. ECF No. 21-1 at 5. Defendants posit Huffman has failed to allege facts in the Amended Complaint sufficient to demonstrate personal participation by Defendants.

### A. Injunctive Relief

Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)). Huffman is serving a life sentence in the Maryland Division of Correction and no longer is housed at WCDC. His injunctive relief requests concerning conditions of confinement were made moot by his transfer from the Detention Center to the Division of Correction. *See Slade v. Hampton Rd. 's Reg'l Jail,* 407 F.3d 243, 248-49 (4th Cir. 2005) (finding pre-trial detainee's claim for injunctive relief mooted by release); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (finding prisoner's Eighth Amendment claims for injunctive and declaratory relief moot based on transfer); *Magee v. Waters,* 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). However, Huffman's request for money damages survives his transfer from WCDC.

### B. PREA Claim

Huffman alleges that between April 2015 and August 12, 2017,[2] he was housed in a cell that pointed a camera at his genitals while he was using the bathroom, which he alleges violated the PREA. Huffman alleges Defendant Schevel would come to his cell and "make rude, unprofessional and sexual comments" about his genitals. ECF No. 18 at 4.

To the extent that Plaintiff seeks to impose liability on Defendants under the PREA, 34

---

[2] The initial complaint was premised on events that allegedly occurred between April and June 2015.

6

U.S.C. § 30301 *et seq.*, he fails to state a cognizable claim because inmates do not have a right to sue under the PREA. *See Williams v. Dovey*, Civil Action No. DKC-15-1891, 2016 WL 810707 at *7 (listing cases). *DeLonta v. Clarke,* No. 7:11-cv-00483, 2012 WL 4458648, *3 (W.D. Va. Sept. 11, 2012) ("Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act"), *aff'd sub nom*, *De Lonta v. Pruitt*, 548 Fed.Appx. 938 (4th Cir. 2013).

The constitutional claim with regard to these allegations, fares no better. Mere verbal abuse and taunting of inmates by guards, including aggravating language, does not state a constitutional claim. *See McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) ("acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Henslee v. Lewis*, 153 Fed.Appx. 178, 180 (4th Cir. 2005) (citing *Collins v. Candy,* 603 F.2d 825, 82 (10th Cir. 1979) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983")). Rude, unprofessional and sexual comments by prison officials, while reprehensible, do not state a constitutional claim. Defendants are entitled to summary judgment as to these claims as a matter of law.

### C. Claims against the Superintendent

Huffman alleges in the Amended Complaint that he tried to complain to the Superintendent about lack of ventilation in his cell, failure to provide him ice when the cell temperature exceeded 90 degrees, black mold in the cell, and the invasion of privacy caused by surveillance cameras in his cell. ECF No. 18 at 5. Huffman faults the Superintendent because "he/she is responsible for the operation of Wicomico Detention Center and for the welfare of all

7

the inmates in that prison/jail." ECF No. 18 at 11.³ Huffman claims that his request to file a grievance with the Superintendent was refused because "he was a sentenced inmate not pretrial" so he was unable to use the WCDC grievance process. ECF No. 3 at 11.⁴ Huffman, however does not allege the Superintendent was personally involved in any wrongdoing, nor that he was actually aware of his concerns.

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). To the extent Huffman intends to impute liability to the Superintendent for purported actions of staff members under his or her supervision, the doctrine of respondeat superior does not apply to § 1983 claims. *See Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries

---

³ Huffman's allegation that he was denied access to the grievance process is belied by the record which contains grievance forms ECF 12-6, at 61, 66 (August 13, 2015), 88, 92-94, ECF No. 12-10 (indicating he was provided two forms at a time). ECF No. 12-10 at 4. In any event, Defendants do not raise lack of exhaustion as a defense. ECF Nos. 12 n 1, 21.

⁴ In *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), the United States Court of Appeals for the Fourth Circuit stated that "there is no constitutional right to participate in grievance proceedings," but it did so in the context of rejecting an inmate's claim that the Eighth Amendment provides a "right to inform" prison officials of dangerous conditions, and that the inmate was subjected to retaliation for exercising that "right" by seeking protective custody. *Id.* at 75. In *ACLU v. Wicomico County*, 999 F.2d 780 (4th Cir. 1993), the Fourth Circuit found a First Amendment right in the prison context, but the right asserted was to be free from retaliation by prison officials as a result of a prisoner's filing of a suit. *Id.* at 785. Huffman does not claim that he was denied grievance forms due to unlawful retaliatory animus.

they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984)). Because Huffman's conclusory assertions provide no nexus between the alleged wrongdoing and the Superintendent's administrative role as head of the WCDC, the Superintendent is entitled to summary judgment.

**D. Claim Against Williams**

Huffman claims that Williams limited his access to the library so that he could not research and prepare for his trial and help his trial counsel prepare his defense. ECF No. 18-6. He claims he was "only allowed one time to get case law on April 13, 2015." ECF No. 18-6; *see also* ECF No. 12-9 (library requests).

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey,* 518 U.S. 343, 355 (1996)). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

A plaintiff must show actual injury resulting from the alleged denial of access. *Lewis*, 518 U.S. at 349. A plaintiff must identify with specificity the actual injury resulting from the defendants' conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316–17 (4th Cir. 1996). The "'actual

9

injury' that an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistant program have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim." *Lewis*, 518 U.S. at 343; *see also Michau v. Charleston Cnty., S.C.,* 434 F.3d 725, 728 (4th Cir. 2006) (in access-to-court claim, inmate must allege and show that he or she has suffered an actual injury or specific harm to his litigation efforts as a result of the defendant's actions).

Huffman was represented by counsel during his detention, trial, post-conviction proceedings, and appeal. ECF No. 12-7. Importantly, Huffman does not particularize what information he needed to provide to his counsel, how this information was needed for his defense, or how he suffered actual injury as a result of Williams' actions. In the absence of any genuine issue as to any material fact, Williams is entitled to summary judgment in her favor as a matter of law.

### E. Claims Against Byrd, Schevel, and Gonzales

#### 1. Due Process Claims

"Due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (emphasis removed)). The inquiry with respect to the conditions alleged "is whether those conditions amount to punishment of the detainee," because the Due Process Clause proscribes punishment of a detainee "prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). "[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin*, 849 F.2d at 870 (citing *Bell*, 441 U.S. at 537).

A particular restriction or condition of confinement amounts to unconstitutional

punishment if it is imposed by prison officials with the express intent to punish or it is not reasonably related to a legitimate, non-punitive goal. *Bell*, 441 U.S. at 538-39 (restrictions or conditions that are arbitrary or purposeless may be considered punishment). In determining whether the challenged conditions amount to punishment, it is not the province of this Court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given its due deference. *See Sandin v. Conner,* 515 U.S. 472, 482-83 (1995).

### a. Conditions of Confinement

Huffman states that he tried to complain to Lt. Byrd about lack of ventilation in his cell, failure to provide him ice when the cell temperature exceeded 90 degrees, black mold in the cell, and the invasion of privacy caused by surveillance cameras which showed his genitals. ECF No. 18 at 5. Huffman does not allege he actually told Byrd about the conditions in his cell, nor does he assert facts sufficient to hold Byrd culpable under principles of supervisory liability. For reasons previously discussed, *see supra* pp. 7-8, these allegations do not state a constitutional claim.

Huffman also claims that in retaliation for litigating "these issues on (6-12-15),"[5] Byrd ordered him to lock into his cell. ECF No. 18-5. When Huffman asked for clarification, he was placed on disciplinary segregation. ECF No. 18 at 5. The uncontroverted record indicates that on June 12, 2016, Huffman refused orders to "lock-in" to his cell. When asked to comply with orders to allow his cell to be locked, Huffman started shouting "fuck you" and "I'm not locking in." ECF No. 12 at 74. Byrd then informed Huffman that he would lose his recreation time that day because of his behavior. *Id.* Huffman continued ranting and threatened to assault and spit on correctional officers. *Id.* at 78, 80. An extraction team was assembled, and Byrd gave Huffman three direct orders to come to the cell door, drop to his knees and allow handcuffs to be

---

[5] It is unclear what "litigation" Huffman references.

placed on him. *Id.* 74-78. Huffman complied and was taken to administrative segregation housing. *Id*. at 76, 80. As a result of this incident, Huffman remained on protective custody in administrative segregation. *Id*. at 50. On June 23, 2015, Huffman was determined to have violated prison rules and placed on disciplinary lockdown for 30 days retroactive to June 17, 2015 and ending on July 17, 2015. *Id.* at 50. Huffman's bald claim of retaliation is directly refuted by the record of this incident, and Byrd is entitled to summary judgment in his favor as a matter of law.

### b. Medical Care

The Due Process Clause of the Fourteenth Amendment "mandates the provision of medical care to detainees who require it." *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (citation omitted). When evaluating the constitutionality of a pretrial detainee's claim, a court must determine whether the government acted in a deliberately indifferent manner to the detainee's serious medical needs. *Harris*, 240 F.3d at 388. A plaintiff must first show that, objectively, the alleged deprivation is sufficiently serious so as to violate the Fourteenth Amendment. *Wilson v. Setter*, 501 U.S. 294, 298 (1991). A detainee satisfies this requirement by demonstrating that he or she suffered from a serious medical need. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 389, 846 (7th Cir. 1999) ). Next, a plaintiff must show Defendants acted with "deliberate indifference" to the right. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference requires both that a defendant "subjectively recognized a substantial risk of harm" and "that his [or her] actions were 'inappropriate in light of that risk.' " *Parrish ex rel. Lee v. Cleveland,* 372 F.3d 294, 303 (4th

12

Cir. 2004) (internal citation omitted). Deliberate indifference is a higher standard than negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.") A prison official's duty under the [Fourteenth] Amendment is to ensure reasonable safety." *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (internal citations omitted).

Huffman alleges that Schevel denied him his asthma inhaler and denied him medical attention. ECF No. 18. He claims Gonzalez refused to give him his inhaler when he was having "issues with breathing due to the extreme heat in the cell…." ECF No. 18 at 5. On one occasion when he attempted to get medical attention, Huffman claims Gonzales told him that he did not have any rights while on the protective custody unit. ECF No. 18 at 5. Huffman states that he had several asthma attacks but Gonzales refused to get him his emergency inhaler. ECF No. 6 at 11.

Huffman does not specify the dates when these incidents occurred or indicate whether he suffered injury. Huffman's medical records show that he was prescribed an Albuterol inhaler for his asthma and was seen by medical providers for a variety of complaints and ailments while confined at WCDC. (ECF 12-6 ex 3 at 94, 96-118,121-132, 136-157). Huffman's medical records, however contain no mention that he requested to be seen for an asthma attack. None of his grievances complained about Schevel or Gonzales denying him his asthma inhaler. ECF 12-6. Importantly, Huffman does not specify how Defendants' actions amounted to deliberate difference to his serious medical needs. Drawing all justifiable inferences in favor of Huffman, he asserts no facts suggesting that Defendants recognized a substantial risk of harm to him, but failed to act accordingly. Viewed in the light most favorable to him, Huffman's allegations may state a claim of carelessness or negligence, but fail to amount to a claim of constitutional

13

moment. Summary judgment will be entered in favor of Defendants as to this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment in a separate Order to follow this Memorandum Opinion.

September 24, 2018 _____/s/_____
GEORGE J. HAZEL
United States District Judge